## AUTHORITY OF A COURT ON MOTION FOR A FINDING AND JUDGMENT ON PLAINTIFF'S EVIDENCE.

Common Pleas Court of Cuyahoga County.

### THE H. A. STAHL COMPANY v. THE EUCLID ARCADE BUILDING COMPANY.

Decided, November 28, 1916.

*Questions of Law and Fact—Motion for a Fnding and Judgment on Plaintiff's Evidence—Should be Treated as a Motion to Direct a Verdict for Defendant—And Not as a Final Submission—Application of the Scintilla Rule.*

1. Where an action at law is tried to the court and at the conclusion of plaintiff's testimony a motion is made for a finding and the judgment of the court thereon, the motion should be treated as though it were to direct a jury to return a verdict for the defendant.
2. A motion for a finding and the judgment of the court on such finding, where interposed at the conclusion of the plaintiff's evidence, should he overruled if the evidence is of such a character that, were the motion for a directed verdict for the defendant instead of for a finding and judgment, the scintilla rule would require that it be overruled.

*Marvin & Marvin,* for plaintiff.
*M. B. & H. H. Johnson,* contra.

FORAN, J.

This case comes into this court on error from the municipal court. The plaintiff in error was plaintiff below. In its statement of claim it says it is an Ohio corporation. That sometime during the month of October, 1912, H. A. Stahl & Company entered into a contract with the defendant to find or procure a tenant for the entire basement of defendant's building located under the Euclid Arcade, in consideration of certain compensation to be paid to it; and that about the 8th of November, 1912, said H. A. Stahl & Company did secure a tenant in accordance with the terms of its contract, but that the defendant wrongfully, and without just cause or excuse, refused to abide by the terms of its contract or accept said tenant; and, further, that

for a valuable consideration the claim of the said H. A. Stahl & Company was assigned to the plaintiff; and that the defendant, though often requested, refuses to pay the compensation provided for in that contract, or any part thereof.

The defendant, in its statement of defense, specifically and in detail denies all the statements and allegations in plaintiff's statement of claim, the statement of defense being practically a general denial.

I have twice read the record and exhaustive briefs of counsel in the case, and perhaps an apology is due the litigants for this tardy expression of the court's views. The questions involved, however, present unusual difficulties in view of what I am strongly inclined to believe will be the ultimate or final result of the litigation.

The claim of the plaintiff that the defendant, during the month of October, 1912, employed H. A. Stahl & Company to find a tenant for the basement of the Euclid Arcade Building, is not conclusively shown by the record; that is, the evidence offered by the plaintiff can not be said to be evidence which precludes contradiction; nor can it be said to possess such weight and force as not to admit of contradiction. But I think the sole question before the court is this: Does the evidence disclosed by the record, though not necessarily conclusive, yet not having been contradicted, warrant the court in holding that it is or was sufficient to call for the intervention of a jury to reach the conclusion the plaintiff claims the evidence justifies?

The case is one involving the right of a broker to collect commissions from a client on a contract of employment for services rendered. It is purely an action at law, triable by a jury, but the right to jury trial was waived and the case was tried to the court. At the conclusion of the plaintiff's testimony, counsel for the defendant interposed this motion: ''I request the court to make a finding for the defendant, and further move that the court enter judgment for the defendant upon its finding.'' This motion was sustained or granted. The record is silent as to the reasons given, if any were given, by the court for its action. But it is claimed by counsel for the plaintiff in its brief, and not denied by counsel for the defendant, that the court below

granted the motion for the reason that the plaintiff had failed to show any authority in the officers of the defendant company to enter into a contract of agency with the plaintiff company for the renting of the rooms or space in question in its building. If counsel for defendant had submitted the case to the court on the plaintiff's testimony, a reviewing court would not disturb the finding or judgment of the trial court, unless such finding or judgment was manifestly against the weight of the evidence, and that can not be said in view of all the evidence in this record. It must be held, however, that the motion of counsel for defendant was in effect a motion to direct a verdict, or what is sometimes called a non-suit.

It is quite evident, if the court denied or refused the motion of defendant's counsel to make a finding and on that finding enter judgment for the defendant, counsel who made or interposed the motion would be at liberty and would have the right to introduce evidence and make his defense. Ordinarily counsel who invoke the iron rule of the non-suit, which is practically a demurrer to plaintiff's evidence, are not willing to take the chances of the submission of the case on the plaintiff's evidence, and no fault can be found for this evidence of caution. The practice of cautious and prudent attorneys is to ask or move for a non-suit or verdict by direction, reserving the right to be heard if the motion is adversely decided. Any other course would, as a rule, be dangerous and hazardous. There are cases, however, where the courage of conviction is profitable, and the case before us we think naturally falls into this class.

It is well settled that in actions at law the rule as to nonsuit or a verdict by direction is the same where the trial is by the court or by a jury. 139 Cal., 392; 61 App. Div. (N. Y.), 453. In a trial before a judge sitting without a jury, in a case where the right to trial by jury exists, a motion for non-suit or judgment for the defendant should be denied where the evidence and inferences reasonably rising therefrom are legally sufficient to prove the material allegations of the plaintiff's declaration. *Weston E. I. Co.* v. *Benecke* (N. J.), 82 Atl., 878. This in effect means that a motion for a non-suit or request for a finding and judgment for the defendant admits the truth of

the plaintiff's evidence and every inference of fact that can be legitimately drawn therefrom, but denies its sufficiency, and the court can not grant such motion unless it can be fairly said there is no evidence in support of the material allegations of the plaintiff's petition. The judge sitting in or trying a case involving questions of fact without a jury, when a motion for non-suit is interposed, before deciding the defendant is entitled to a judgment on the plaintiff's evidence, would have to weigh the evidence as would a jury, and thus probate its value; and this, under the law in this state, he may not do. The court below evidently proceeded upon the assumption that the case was before him as upon final submission, or did not pause to consider the distinction between deciding a question of law and a question of fact.

Undoubtedly it is well settled that a corporation for profit can not act so as to be legally held liable except through its board of directors or some one duly authorized by the board or by the regulations of the corporation to act for it. Corporations are held, however, where it appears that by a course of general conduct it has permitted a person to act · for it and has subsequently ratified the act of such person. The plaintiff claims its contract was made with one Edward C. Kenney, a member of its board of directors, who it claims was the manager of the defendant company. The evidence seems to clearly indicate that Mr. Kenney, in October, 1912, was in charge of the Euclid Arcade Building, in the sense that he was the only person on the premises representing the defendant. He was engaged in doing some construction work on the building and was located in what might be termed the defendant company's office most of the time, though he says he also had a private office of his own. He unquestionably had such control over the premises as to prevent trespass thereon or therein, consult with tenants and others having business with the defendant company, and see and consult with prospective tenants. Whether he had authority from the board of directors to lease or rent rooms or space in the building is clearly a disputed question. He was called by plaintiff's counsel and examined as upon cross-examination. Inasmuch as he is not a "party" to the suit, the proceeding in this

respect seems a trifle irregular. He testified that the Guardian Savings & Trust Company was the rental agent for the building; and when asked what he meant by that, he said that the trust company had entire charge of renting the property. When asked what his duties were, he answered, "Sort of general supervision, looking after to see that the money was spent properly and not extravagantly. I simply occupy the position of looking after the enterprise and after the money that was being spent." And further he said that he had almost unlimited powers with respect to the new work in the building. And, further, "I was manager of the property for about sixteen to twenty months from the time they took over the property and started to make the changes and remodeled the building." When asked what, if anything, he had to do with the renting of the rooms, he replied: "I don't have anything to do with the renting of the property, only in connection with the Guardian Savings & Trust Company." Again, he was asked this question: "Did you ever rent any of these rooms to any one yourself?" To which he answered, "Only in conjunction with the Guardian Savings & Trust Company."

These answers or statements are inconsistent with the claim that the Guardian Savings & Trust Company was the sole or the exclusive renting agent of the defendant. There is an admission that he, Kenney, did rent rooms in this building in conjunction with the Guardian Savings & Trust Company or in connection with that company. To do a thing in conjunction or connection with another person means to do it in union or in combination or association with such person. When Mr. Kenney said he had nothing to do with the renting of this property only in connection with the Guardian Savings & Trust Company, or that he rented rooms belonging to the defendant only in conjunction with the Guardian Savings & Trust Company, there can be no inference but that he rented rooms in that way or in that manner, and in no other way or manner; that is, in no way or manner except in association or combination with the Guardian Savings & Trust Company. We think it a fair and reasonable inference that he did rent space for the defendant in association and combination with the Guardian Savings & Trust Company,

or, in other words, jointly with that corporation. Just how he acted in connection or in conjunction with the Guardian Savings & Trust Company in this respect does not appear. Evidently counsel for the plaintiff was reluctant to press the matter; and counsel for the defendant, for reasons of their own, thought it advisable not to do so. But if it is true that space or rooms in the defendant's building were jointly rented or leased, or rented and leased in connection or conjunction with the Guardian Savings & Trust Company, and such space was occupied by tenants and rent accepted by the defendant with knowledge of the facts, it may be fairly inferred that Director Kenney had authority, or at least exercised authority, recognized by the defendant, so far as renting rooms or space is concerned.

That Mr. Kenney requested the plaintiff's agent to procure a tenant for the defendant, and agreed to pay compensation or commission therefor, or for so doing, to said agent, or the plaintiff, and furnished plaintiff's agent with blue-prints of the general plan of the building, is not denied. It clearly appears that Mr. Kenney assumed authority to act for the defendant, and represented that he did have such authority, by his conduct at least; and it is admitted that Mr. Durell, the president and largest stockholder of the defendant, was informed by plaintiff, or its agent, of the consultations and talks with Mr. Kenney, and said that he would think the matter over and would consider any definite proposition made in writing. Another director of the defendant company, a Mr. Widlar, also was fully cognizant that the plaintiff was making efforts to rent certain space in the defendant's building through Mr. Kenney.

In view of all the circumstances, we are inclined to believe that it will not be seriously denied that if the plaintiff had procured a tenant wholly satisfactory to the defendant as to business and personality, such tenant would have been accepted and no question as to Kenney's authority in the premises would have been raised. A corporation can confer authority, as has been said, to bind it, by general course of conduct; and there is some evidence in the record tending to prove that the defendant company had notice and was cognizant that Mr. Kenney was negotiating with the plaintiff respecting a tenant for space in the

defendant's building. This testimony may be somewhat weak and hazy, but that only goes to its value, and its value the court, on a motion for a non-suit, had no right to probate or weigh. It must be true, however, that where a contract is made with a broker to find or procure a tenant for an owner of a building, there is an implied understanding that the tenant shall be satisfactory to the owner if the contract is silent on that question. But the owner may not raise captious objections merely for the purpose of avoiding the performance of the contract. We apprehend that such objections should be reasonable under all the circumstances; and this of course involves a question of fact.

In view of all the facts in the record, we are of the opinion that there was, under the scintilla rule, sufficient evidence offered by the plaintiff to justify its submission to a jury if the case had been tried to a jury; and as has been seen, it makes no difference, so far as the rule is concerned, whether the case was tried to a jury or tried by the court.

The scintilla rule, as understood in Ohio, has become *stare decisis;* and in a recent case, *Gibbs* v. *Village of Girard,* the history, development and constant reaffirmations of the doctrine are set forth in a very able opinion by Wanamaker, J., in which he says, page 43 (88 O. S.):

"that we heartily reaffirm the doctrine.

"To hold otherwise would not only commit but permit, in a multitude of cases, a sinister and indirect invasion and usurpation of the right of trial by jury. A legislative act impairing it would be clearly unconstitutional. How, then, can a judicial order or judgment that indirectly but most effectually defeats the right of trial by jury, be otherwise than an invasion and violation of a party's rights? The right is merely to have questions of fact determined in the first instance by a jury under proper instructions of the court appropriate to the issues and the evidence. If the jury shall err, the trial judge may thereafter correct the error; and if he fail to correct it, the higher courts are still available."

There is a clear distinction between the scintilla rule as applied in Ohio and the federal rule as found in *Pleasants* v. *Fant,* 22 Wall., 116. Judge Dillon in "Laws and Jurisprudence," 130, gives the two rules, which are here quoted in parallel:

| SCINTILLA RULE. | FEDERAL RULE. |
|---|---|
| "If there is any evidence, including all reasonable inferences deducible therefrom, tending to prove each material fact put in issue indispensable to a recovery, the case must be submitted to the jury." | "In every case, before the evidence is left to the jury, there is a preliminary question for the judge; not whether there is literally no evidence but whether there is any (including all the inferences which the jury can justifiably draw therefrom), upon which the jury can *properly* find a verdict for the party producing it." |

The federal rule is practically the English rule. The meaning of the scintilla rule is plain. If there is any evidence, including all reasonable inferences deducible therefrom, tending to prove all the facts incumbent on the plaintiff to establish in order to maintain his action, he has a right to have the *weight and sufficiency thereof* passed upon by the jury; and it is not proper in such case, on motion to non-suit or direct a verdict, to render a judgment against him.

In the federal rule it will be noticed that the word "properly" is italicized. We give the rule just as Judge Dillon claims it to be.

There are two essential points of difference between the two rules. Under the federal rule the court is the judge of the inferences which the jury may or should draw from facts, because the rule limits the power of the jury, in drawing inferences from facts, to those which the judge may think are justifiable. The scintilla rule gives the jury the unqualified right to draw all reasonable inferences favorable to the plaintiff's case from the evidence before it. Then again, the federal rule gives the court the right to say in any case whether the jury can or can not *properly* find a verdict on the evidence before it. This right the scintilla rule denies the court where there is any evidence tending to prove the issues made by the plaintiff's pleadings. The jury might be of the opinion that it could *properly* find a verdict, but if the court is of a different opinion, that ends the controversy, for the jury would be deprived of an opportunity to express its opinion.

The federal rule, carried to its ultimate consequences, means the absolute destruction of the right of trial by the jury, as has been pointed out by Wanamaker, J.

In *Ellis* v. *Insurance Company,* 4 O. S., 628, it is held in the syllabus that a motion to take the evidence given by the plaintiff from the jury may, in a proper case, be granted by the court. But the court says: "Such a motion involves an admission of all the facts which the evidence in any degree tends to prove, and presents only a question of law whether each fact indispensable to the right of action and put in issue by the pleadings has been supported by some evidence."

The opinion in this case was written by Ranney, J. He says, page 645:

"When all the evidence offered by the plaintiff has been given, and a motion for a non-suit is interposed, *a question of law* is presented whether the evidence before the jury *tends* to prove all the facts involved in the right of action and put in issue by the pleadings. In deciding this question, *no finding of facts* by the court is required, and no weighing of the evidence is permitted. All that the evidence in any degree tends to prove must be received as fully proved. Every fact that the evidence and all reasonable inferences from it conduces to establish must be taken as fully established."

It is thus seen that when a motion for non-suit is interposed, only a question of law is presented. In deciding this question of law, the court must not weigh or attempt to find the probative value of the evidence. The court could say that as a matter of law there is no evidence tending to prove all the facts involved in the right of action and put in issue by the pleadings. But the court has no right to analyze and discuss the evidence and draw inferences from facts proven in order to justify a non-suit; and if he does so he is following the federal and not the Ohio rule. When the court finds it necessary to weigh the evidence or to draw inferences from facts, the case is for the jury. It is only where no evidence is introduced by the plaintiff tending to support the issue, or where it is such as to clearly show that he has no cause of action, that it is the duty of the court to direct a verdict or a non-suit. See also 38 O. S., 392; 24 O. S., 83.

The right of a party to have the evidence passed upon by the jury is a right of which he can not be deprived; and where the

court does so, it involves the exercise of power for which, without the consent of the plaintiff, the court is incompetent. When a court undertakes to weigh evidence, his opinion is no better than that of any intelligent man on the jury.

The decision upon a non-suit, at common law, was in no case final so as to conclude the rights of either party, but the plaintiff might bring his action *de novo*. *Ellis* v. *Insurance Company, supra;* 1st Hand., 97. A non-suit left the plaintiff at liberty to bring a new suit. Wright, 420.

From 1858 to 1875 the law in this state gave a plaintiff who was defeated in an action the right to a second trial upon entering into an undertaking to the defendant to abide the judgment of the court, and perhaps paying a small jury fee.

The whole trend of judicial opinion in Ohio is to the effect that the right to trial by jury must be jealously guarded; and for that reason, if the trial court, where a case involving questions of fact is tried to him, has any doubt as to his right to grant a non-suit, the motion for such direction should be refused. And the trial court, as a rule, where cases are tried to a jury, when in doubt as to whether the plaintiff has made a case or not, always submits questions of fact to a jury.

The court has intimated that if counsel for the defendant, instead of making its motion for a finding in favor of defendant and for a judgment upon that finding, had submitted the case to the court upon the plaintiff's evidence, we would not feel at liberty to disturb the finding made by the court or the judgment thereon entered. This may seem inconsistent, but in reality it is not so. For if the case had been finally submitted to the court below, and the court had found for the defendant and entered judgment upon its findings, that judgment could not be reversed unless it was manifestly against the weight of the evidence. *Breese* v. *State*, 12 O. S., 146.

Before a reviewing court would be justified in setting a judgment or verdict aside for evidential reasons, it must be plainly apparent to the mind, clearly evident to the senses and free from all doubt or obscurity that the verdict or judgment is not sustained by sufficient evidence. In *McGatrick* v. *Wasson*, 4 O. S., 567, Thurman, J., said, quoting from *French* v. *Williard*, 2. O. S., 53:

"A mere difference of opinion between the court and jury does not warrant the former in setting aside the finding of the latter. That would be in effect to abolish the institution of juries and substitute the court to try all questions of fact."

In the McGatrick case, *supra*, Thurman, J., further said, page 575:

"We must presume that the jury found the facts to be those above stated as necessary to make the defendant liable. Should we disturb this finding? If it is clearly wrong, we must do so. If we only doubt its correctness, we must let it alone."

When a case is tried to the judge, if it involves a question of fact, the judge acts both as court and jury. He sees the witnesses and hears them testify and has opportunities of judging of their credibility, which the record does not afford a reviewing court. Therefore a reviewing court will not disturb a finding or judgment by the trial court unless it is clearly and manifestly against the weight of the evidence. Hence, while we are of the opinion that in the case now before us there was evidence which might properly be left to a jury, yet if the jury found for the defendant, that finding would not be disturbed by this court; and if the case had been submitted to the trial judge, we would treat it precisely as if it had been submitted to a jury.

In view of these considerations, we hold:

First, that where an action at law is tried to a judge, and at the conclusion of the plaintiff's testimony a motion is made for a finding and the judgment of the court upon that finding, the court must treat the motion as if it had been a motion to direct a jury to return a verdict for the defendant.

Second. And if, in the application of the scintilla rule, the court would refuse such motion, it must also refuse the motion for a non-suit or a finding for the defendant.

Third. We hold that the evidence as disclosed by the record was sufficient to require the submission of the facts to a jury if the case had been tried to a jury.

To state the proposition differently, we hold that, assuming the truth of all the evidence given by the plaintiff, however slight, tending to sustain its right to recover, and all inferences of fact reasonably deducible therefrom, this evidence, as we find it in

the record, is of sufficient probative force or value to enable an ordinary, intelligent man to draw a rational conclusion therefrom in support of the plaintiff's right to recover; and therefore, if the case had been tried to a jury, it would have to be submitted to the jury for determination of its weight and sufficiency if a motion to direct a verdict had been interposed, even though the judge was of the opinion that the weight of the evidence was insufficient to support the issue.

It is sometimes said if different minds of ordinary intelligence would come to a different conclusion as to the weight and sufficiency of the evidence, the determination of that weight and sufficiency is for the jury and not for the court.

The jury, if this case had been tried to a jury, probably would have found for the defendant on the evidence in this record; but that is not the question. If different minds of ordinary intelligence would come to different conclusions as to what this testimony tended to prove, the plaintiff had a right to have the issues determined and the evidence weighed as if by a jury. See *Street Ry. Co.* v. *Snell,* 54 O. S., 197.

At the conclusion of the plaintiff's testimony counsel asked the court for leave to amend its statement of claim with respect to the date of the original employment, and also with respect to inserting an allegation as to the dissolution of the firm of Davies, Stahl & Company and the transfer to H. A. Stahl by Davies of all interest in and to said partnership business, and a correction as to allegation and statement of claim whereby it is alleged that the original employment was with H. A. Stahl & Company, whereas it was with Davies, Stahl & Company, and to make the pleadings conform to the proof. The court granted this motion, and we think properly; and we think it wholly immaterial whether the plaintiff actually amended his pleading to conform to the proof, providing a verdict had been rendered for the plaintiff, as the journals of the court would show that leave had been granted to make the pleadings conform to the proof. Counsel for the plaintiff, however, failed to file an amended pleading, or statement of claim, and subsequently filed it in this court; and a motion is made by counsel for the defendant to strike this amended statement of claim from the

files. This motion is granted, as this court is not concerned with anything except the question of error presented by the petition in error.

It is contended by counsel for the defendant that, under the original statement of claim, it was alleged that the defendant employed Davies, Stahl & Company, a partnership composed of Mr. Davies and Mr. Stahl, as its agents to rent the basement of its building, but that this partnership was dissolved before a tenant was secured, and transferred its assets to H. A. Stahl, doing business as H. A. Stahl & Company; that H. A. Stahl is alleged to have furnished a tenant who was willing to lease the premises upon the terms offered. It is then claimed by counsel for the defendant that where a partnership is employed as agent, a dissolution of the partnership terminates such employment. This is perhaps true; but if a cause or right of action accrues to the partnership, and that cause or right of action is assigned to the successor of the partnership, we think the cause or right of action survives, and that it does not terminate because of the dissolution of the partnership.

If, as plaintiff contends, the defendant entered into an executory contract with H. A. Stahl & Company, and at the time of the dissolution of the partnership the things provided for by the contract remained yet to be done or performed, and this executory contract was assigned to the plaintiff by the partnership, the dissolution of the partnership did not relieve the defendant or the plaintiff of responsibility for the performance of the contract. By the transfer and assignment, the plaintiff assumed the obligations of the partnership, and was responsible to the defendant for the performance of this executory contract; and if the defendant suffered any loss by the failure to perform on the part of the plaintiff, the plaintiff would be responsible therefor; and likewise the defendant would be responsible to the plaintiff if loss was suffered by the plaintiff by reason of the defendant's failure to perform under the executory contract.

The judgment of the municipal court will be reversed for error in granting the defendant's motion to make a finding for the defendant, and on that finding to enter judgment for the defendant; and the case will be remanded.